UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

FRANKIE CORTES,

        Plaintiff,

    -v-                                 No.  08 Civ. 4805 (LTS)(RLE)

THE CITY OF NEW YORK, et al.,
                Defendants.

------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Plaintiff Frankie Cortes, a former Corrections Officer with the New York City Department of Correction ("DOC"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981, 1983, and 1985 ("Section 1981", "Section 1983," and "Section 1985"), the First and Fourteenth Amendments to the United States Constitution, the New York State Human Rights Law, codified at N.Y. Exec. Law § 296 ("SHRL"), and the New York City Human Rights Law, codified at N.Y.C. Admin. Code § 8-101 et seq. ("CHRL"), alleging retaliation and discrimination on the basis of his gender and race.  The Court has jurisdiction of the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

        Defendants seek the dismissal of the Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(c).  Defendants argue that Plaintiff's Section 1981, 1983, and 1985 claims and state law claims that accrued prior to May 22, 2005, should be dismissed as time-barred and that any claims under Title VII that accrued before January 13, 2007, are untimely as well. Defendants also assert that findings of the Office of Administrative Trials and Hearings ("OATH")

Administrative Law Judge ("ALJ") preclude Plaintiff's constitutional and state law claims. Defendants further argue that Plaintiff's Title VII claims must be dismissed as against the individual Defendants, and that Plaintiff has failed to state a claim upon which relief may be granted as to any of his causes of action.  The Court has considered thoroughly all of the parties' submissions.  For the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

_____The underlying facts of this case as alleged in the Complaint are taken as true for purposes of Defendants' motion.  On or about February 22, 2007, Plaintiff Frankie Cortes was terminated from his employment at the DOC, where he had worked since 1988.  (Compl. ¶ 16.)

On May 7, 2002, Plaintiff was a witness to an incident involving Corrections Officers Frank Kumpan and Sadie Smith that prompted Officer Kumpan to file an Equal Employment Opportunity Complaint ("EEO Complaint").  (Id. ¶ 54.)  Plaintiff served as the witness in support of that complaint. (Id. ¶ 54.)

On June 21, 2002, Corrections Officers Sadie Smith and Sheena Thompson assaulted Plaintiff at his assigned post at the Bronx Criminal Court.  (Id. ¶ 55.)  Following the assault, Plaintiff was immediately taken to the hospital.  (Id. ¶ 56.)  Sadie Smith was the EEO representative for the court officers at the time.  Plaintiff asserts that the attack was triggered by his status as a witness to Officer Kumpan's EEO complaint.  (Id. ¶¶ 54, 59.)

After leaving the hospital, Plaintiff was brought to the Vernon C. Bain Center, a detention facility, at the request of Neil Shulman, the Deputy Warden for Administration at the Bronx Detention Center.  (Id. ¶ 56.)  Plaintiff informed Deputy Schulman that he wanted Sadie Smith and Sheena Thompson arrested.  (Id..)  Deputy Schulman responded that Plaintiff would need to file a written request with the Warden, Richard J. Palmer, pursuant to Department of

Corrections Rules and Regulations.  (<u>Id.</u>)  Plaintiff's subsequent written request was denied.  (<u>Id.</u>)

On July 9, 2002, Plaintiff was notified that he would be transferred to the Riker's Island facility.  (<u>Id.</u> ¶ 57.)  On the same day, Plaintiff was required to write two reports, one concerning "whether he was wearing his vest" at the time of the assault and another addressing a charge that he was playing impermissibly loud music on April 9, 2002.  (<u>Id.</u> ¶¶ 56, 57.)  Around this time, Sadie Smith was allowed to retire, taking with her a "good guy letter," and Sheena Thompson was transferred to a coveted position at the Manhattan Criminal Courts building.  (<u>Id.</u> ¶57.)  Plaintiff thus asserts that his assailants were treated favorably while he was punished for protecting his rights as a victim of an assault.

On August 7, 2002, Plaintiff filed an EEO complaint with the DOC's EEO Office that "was not resolved to [his] satisfaction."  (<u>Id.</u> ¶ 58.)

Plaintiff asserts that Deputy Schulman retaliated against him for his reaction to the assault and that Shulman, because of his "close relationship" with Sadie Smith, had a part in the decision to transfer Plaintiff to Riker's Island.  (<u>Id.</u> ¶59.)  Plaintiff contends that he was discriminated against based on his gender and punished for being the victim of an assault by two female officers.  (<u>Id.</u> ¶ 59.)

After filing charges with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed an action in the United States District Court for the Southern District of New York on July 16, 2004, asserting claims for retaliation and discrimination on the basis of sex.  (<u>Id.</u> ¶ 19.)  Plaintiff alleges that, during the time the action was pending, he was "put on the wheel," harassed, and written up on spurious disciplinary charges.  (<u>Id.</u>)  Plaintiff claims that, during the pendency of the litigation, he was also subjected to "new forms of retaliation and hostile work environment by his new supervisors at [t]he . . . Vernon C. Bain Center, in particular Deputy

Warden Diane Carn" and that, on one occasion, Carn informed Plaintiff that she had knowledge of the ongoing litigation.  (Id. ¶20.)  In addition, Plaintiff learned from another corrections officer that Deputy Carn had uttered words to the effect of "'Officer Cortes, I've got something for his ass.'" (Id.)  On account of these facts, Plaintiff came to believe that his treatment was the result of animus towards him for filing a complaint in federal court and hostility on account of his sex and Hispanic race.  (Id.)

As the litigation progressed, Plaintiff was brought up on two separate rounds of disciplinary charges before OATH.  (Id. ¶21.)  In the first proceeding, the allegations were that, in order to avoid a drug test, Plaintiff made false statements in connection with his request for leave to attend the funeral of a man whom Plaintiff claims served as a father figure to him.  (Id.)  Plaintiff claims that, after he had requested bereavement leave, Carn circulated a memo in violation of procedure, stating that Plaintiff would not be entitled to "grievance [sic]" or any other leave.  (Id.) Plaintiff proffers that other corrections officers not involved in litigation were routinely permitted to attend funerals without being subjected to these types of accusations and scrutiny, and that Carn's suspicion of his motives for seeking leave to attend the funeral was prompted by his race and gender (Plaintiff alleges that Carn did not so scrutinize such requests from female and/or African-American employees).  (Id. ¶ 22.)  On June 16, 2006, the ALJ recommended that Plaintiff be suspended for 60 days.  (Id. ¶23.)

Plaintiff claims that the second set of administrative charges involved matters that had previously been addressed and considered by the ALJ in the first proceeding.  (Id. ¶ 23.) Plaintiff further alleges that the charges involved incidents that Defendants had been aware of and elected not to raise in the previous proceeding, and that Defendants only chose to rekindle them out of dissatisfaction with the ALJ's 60-day suspension recommendation.  (Id.)  As a result of the

second proceeding, on January 22, 2007, the ALJ recommended termination.  (Id.)  On February 22, 2007, Plaintiff was officially terminated.  (Id. ¶ 25.)

On February 12, 2007, Plaintiff and Defendants stipulated to dismiss without prejudice Plaintiff's then-pending discrimination lawsuit in the Southern District of New York.  (Id. Ex. B.)

On November 9, 2007, Plaintiff filed another charge with the EEOC and, on April 22, 2008, Plaintiff was notified of his right to sue.  (Id. Ex. A.)  On May 22, 2008, Plaintiff filed his complaint in the current action.  Plaintiff's first, second, and third causes of action arise out of Defendants' conduct after July 16, 2004, and respectively rely on Title VII, alleged constitutional violations, and state law.  Plaintiff's fourth, fifth, and sixth causes of action accrued prior to that date and rely on the same legal bases.

DISCUSSION

In considering a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, the court applies the same standards used for determination of a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  See LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475-76 (2d Cir. 2009).  Thus, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  To survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A pleading that offers labels and conclusion or a formulaic recitation of elements of a cause of action will not do."  Iqbal, 129 S. Ct. at 1949.  This plausibility standard applies to all civil actions.  Id. at 1953.

<u>Title VII Claims</u>

*Claims Against Individual Defendants*

Defendants correctly note, and Plaintiff does not dispute, that individuals are not "employers" subject to Title VII liability.  Accordingly, Defendants' motion to dismiss the complaint is granted to the extent Plaintiff's Title VII claims are asserted against Defendants Carn, Schulmer and Palmer.

*Statute of Limitations*

Title VII claims are subject to administrative agency complaint filing requirements as set forth in 42 U.S.C. § 2000e-5(e)(1).  In New York, an individual must file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1) (2006).  Title VII "precludes recovery for discrete acts of discrimination or retaliation that occurred outside the statutory time period."  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 105 (2002).  Moreover, "each [discrete] discriminatory act starts a new clock for filing charges . . . ."  <u>Id.</u> at 113.  "A discrete act of discrimination is an act that in itself constitutes a separate actionable unlawful employment practice and that is temporally distinct."  <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618, 638 (2007) (internal quotation marks and citation omitted).  Examples of discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire."  <u>Morgan</u>, 536 U.S. at 114.  By contrast, a hostile work environment claim will not be barred by the statute of limitations if all acts constituting the claim are part of the same unlawful practice and at least one such act falls within the statutory period.  <u>Id.</u> at 122.

Plaintiff's Title VII claims that are premised on discrete acts of alleged discrimination or retaliation that occurred prior to January 13, 2007 (<u>i.e.</u>, more than 300 days prior to the filing of his November 9, 2007, Charge of Discrimination with the EEOC), are time-barred under

this standard.  The only discrete discriminatory act that Plaintiff alleges occurred after January 13, 2007, and that remains actionable under Title VII's limitations principles, is his February 22, 2007, termination.  To the extent Plaintiff alleges that the various actions dating back to 2002 of which he complains comprised a hostile work environment encompassing the termination, however, his Title VII claim is not clearly time-barred.

Plaintiff argues, however, that he should be permitted to pursue his otherwise-untimely Title VII claims under the doctrine of equitable tolling, or as a matter of judicial discretion.  Plaintiff asserts that the 2007 voluntary, without-prejudice, dismissal of his first employment discrimination action was the product of an agreement with defense counsel that the claims asserted in that action could be reasserted and would be litigated in a subsequent action encompassing the unlawful termination allegations.  The parties' stipulation says nothing on its face regarding waiver of the statute of limitations, and, in New York, a dismissal without prejudice renders the dismissed action a nullity for statute of limitations purposes.  See Johnson v. Nyack Hosp., 86 F.3d 8, 11 (2d Cir. 1996); Jewell v. County of Nassau, 917 F.2d 738, 740 (2d Cir. 1990).  Given, however, that the statute of limitations is an affirmative defense not required to be negated on the face of the pleadings, and that Plaintiff has proffered arguments and evidence that might support a finding of waiver or grounds for equitable tolling, Defendants' motion is denied insofar as it is premised on statute of limitations grounds, without prejudice to renewal of their limitations defense in later summary judgment motion practice or at trial.

*Sufficiency of Retaliation Allegations*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a) (West 2006).  In order to prevail under a theory of retaliation a plaintiff must show that: (1) plaintiff was engaged in a protected activity; (2) the employer knew of the activity; (3) the employee suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 177 (2d Cir. 2006).

Plaintiff's participation as a witness in support of his fellow Corrections Officer Frank Kumpan's EEO complaint regarding an incident on May 7, 2002, involving Sadie Smith constitutes a protected activity, see Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 175 (2d Cir 2005) ("we conclude that Congress intended the anti-retaliation clause to protect a volunteer witness poised to testify in support of a co-worker's discrimination claims"); Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (" In addition to protecting the filing of formal charges of discrimination, [Title VII's] opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."), and he has plead sufficiently that his subsequent assault and transfer constitute adverse employment actions, see Galabya v. New York City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000) ("a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career"). Plaintiff's filing of his first EEOC complaint and his subsequent action in this Court are also protected activities for the purposes of Title VII, and Plaintiff's February 22, 2007, termination constitutes an adverse employment action.

Defendants argue that Plaintiff's claim is deficient for failing to plead facts that

plausibly suggest a connection between the protected activities and Plaintiff's relocation, suspension, and termination.  Direct evidence as well as inferences may be used to support the allegation that Defendants' adverse employment action was the result of retaliatory animus.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001); Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001).  Plaintiff has sufficiently plead causation as to his retaliation claims accruing prior to July 16, 2004.  The temporal proximity between Plaintiff's participation as a witness in support of Officer Kumpan's EEO complaint and the alleged assault that led to Plaintiff's July 9, 2002, transfer creates a plausible inference that retaliation for the protected activity was the cause of the alleged assault and his subsequent relocation to a less desirable post within the Department of Corrections.  See  Cifra, 252 F.3d at 217 ("The causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (quoting Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996))).  Moreover, that Sadie Smith was involved in the incident involving Kumpan, served as the EEO representative for the court officers at the time, and was also Plaintiff's alleged assailant strengthens the inference of retaliation.

Plaintiff has also sufficiently plead causation as to his retaliation claims accruing after the filing of his first action in federal court.  His allegations regarding the events leading up to Plaintiff's termination on February 22, 2007, including statements allegedly made and actions taken by Defendants, as well as Plaintiff's 60-day suspension on June 16, 2006, when viewed in conjunction with the allegations that gave rise to Plaintiff's first litigation, are sufficient to raise a plausible inference that the alleged harassment and scrutiny, and the preferment of charges that lead to Plaintiff's suspension and ultimate termination, were part of an ongoing pattern of retaliation. Plaintiff alleges that, after he commenced his first action in federal court, he was "put on the wheel;"

Deputy Carn subjected Plaintiff's request for bereavement leave in May 2005 to greater scrutiny than other employees' requests; Deputy Carn circulated a memo, allegedly in violation of procedures, stating that he should not be entitled to leave; Carn informed Plaintiff that she knew of the pending litigation; Carn allegedly was overheard saying "Officer Cortes, I've got something for his ass;" and he was brought up on exaggerated disciplinary charges prior to those that resulted in his termination. (Compl. ¶¶ 19-21.)  When consideration is given to Plaintiff's initial transfer, the alleged statements of Deputy Carn, the alleged pattern of retaliatory treatment dating back years before the termination, and the fact that the litigation was pending throughout the period in which the alleged retaliations took place, Plaintiff has stated a plausible claim of Title VII retaliation arising out of his earlier employment discrimination litigation.

*Sufficiency of Sex and Race Discrimination Allegations*

Title VII prohibits an employer from discriminating against an individual with respect to his "compensation, terms, conditions, or privileges of employment" because of race and gender. 42 U.S.C. § 2000e-2(a)(1).  In order to establish a prima facie case of race or gender discrimination, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) there were circumstances giving rise to an inference of unlawful discrimination.  Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000).  At the pleading stage, however, Plaintiff need not allege specific facts establishing a prima facie case of discrimination.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511-12 (2002). Rather,  "the ordinary rules for assessing the sufficiency of a complaint apply."  Id. at 511.  The Swierkiewicz Court held that the complaint at issue in that case "easily satisfie[d] the requirements of Rule 8(a) because it [gave] respondent fair notice of the basis for petitioner's claims" because it "alleged that [petitioner] had been terminated on account of his national origin . . . and on account of

his age" and "detailed the events leading to his termination, provided relevant dates, and included the

ages and nationalities of at least some of the relevant persons involved with his termination." Id.  The

Twombly Court explained that factual allegations of this nature suffice to properly state a

discrimination claim even under the pleading standard announced in that later decision.  Twombly,

550 U.S. at 569-70.

Courts in the Second Circuit, including the Court of Appeals itself, have since held

that complaints containing specific factual allegations as to events leading up to the adverse action

complained of and accompanied by conclusory allegations of discriminatory intent or animus suffice

to state a discrimination claim.  See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 214-15 (2d Cir. 2008)

(holding, in a case involving a pro se plaintiff, that the complaint was sufficiently plead because

plaintiff had "identified the particular events giving rise to her claim and alleged that she was treated

less favorably than other loan applicants because of her race, her gender and location of her

property"); Gillman v. Inner City Broadcasting Corp., No. 08 Civ. 8909 (LAP), 2009 WL 3003244,

at *3 (S.D.N.Y. Sep. 18, 2009) ("Iqbal was not meant to displace Swierkiewicz's teachings about

pleading standards for employment discrimination claims because in Twombly, which heavily

informed Iqbal, the Supreme Court explicitly affirmed the vitality of Swierkiewicz.").  The Boykin

Court, in particular, noted the Twombly Court's "mixed signals" that both "suggested that [the

Supreme Court] intended to make some alteration in the regime of pure notice pleading" and "also

affirmed the vitality of Swierkiewicz, which applied a notice pleading standard."  Boykin, 521 F.3d at

213 (internal quotation marks and citations omitted).  The Second Circuit explained that Twombly

established "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some

factual allegations in those contexts where such amplification is needed to render the claim

plausible," id. (internal quotation marks, citation, and emphasis omitted), and concluded that "[t]here

is no heightened pleading requirement for civil rights complaints alleging racial animus . . . .  We have upheld the vitality of this principle since Twombly," id. at 215 (internal citations omitted).

In the instant case, Plaintiff alleges that he was transferred, "put on the wheel," brought up on disciplinary charges, and ultimately terminated; he provides the dates of, and the identities, gender, and race of persons involved in these events; and he further alleges that his termination was motivated by Defendants' hostility towards Hispanic males.  Plaintiff further alleges that Deputy Warden Carn treated him differently from African-American female officers with regard to breavement leave requests.  His pleading is thus sufficient under the Swierkiewicz standard, even in the wake of the Twombly and Iqbal decisions, to state plausibly his claim for sex and race discrimination.

*Hostile Work Environment - Exhaustion of Remedies*

Defendants also argue that Plaintiff's hostile work environment claim must be dismissed because he has not exhausted his administrative remedies.  To maintain a Title VII discrimination claim in federal district court, a plaintiff must first exhaust his or her administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'"  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)).  Claims not raised before the EEOC may nevertheless be raised in a plaintiff's complaint if they are "reasonably related" to those that were brought before the agency.  Jute, 420 F.3d at 177.  To determine whether the claims are "reasonably related," the court should focus on the nature of the factual allegations in the EEOC complaint and whether they would have put the EEOC on notice of the substance of the allegedly discriminatory conduct and provided adequate information on which the agency could begin an investigation.  Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006).  Since Plaintiff's November 9, 2007,  EEOC

complaint detailed the same full range of complained-of incidents and policies going back to 2002 that is recited in the Complaint, the principal relevant difference between the two is that the EEOC complaint did not use the words "hostile work environment."  This omission notwithstanding, the content of the charge was sufficient to put the EEOC on notice of Plaintiff's claim of significant negative alterations, motivated by discriminatory and/or retaliatory animus, of his work environment and terms and conditions of employment.  The hostile work environment claim asserted by Plaintiff before this Court is thus "reasonably related" to the subject matter of the EEOC complaint, and Defendants' motion is denied insofar as it is premised on failure to exhaust administrative remedies under Title VII.

*Hostile Work Environment - Sufficiency of Allegations*

A hostile work environment claim is composed of a series of acts that collectively constitute one "unlawful employment practice."  42 U.S.C. § 2000e-5(e)(1).  In order to prevail under this theory of discrimination, a plaintiff must demonstrate that "the misconduct was severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim . . . also subjectively perceive[s] that environment to be abusive."  Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003); see also Gregory v. Daily, 243 F.3d 687, 691-92 (2d Cir. 2001); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  A court will determine whether an environment is hostile by examining the totality of the circumstances, which may include the frequency of the discriminatory treatment and its severity, whether the abuse was physical or mere verbal insult, and the extent to which the conduct interfered with the plaintiff's ability to perform at work.  See Harris v. Forklift Systems, Inc., 510 U.S. 17, 22-23 (1993).  In addition, the plaintiff must demonstrate that the abusive conduct was motivated by animus towards a protected class.  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile

environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). Alfano v. Costello, 294 F.3d 365, 380 (2d Cir. 2002). However, as with Plaintiff's race and sex discrimination claims, he need not plead facts demonstrating that the race- or sex-based animus was the cause of the abusive conduct. See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 240-41 (2d Cir. 2007) ("At the pleading stage of the case, however, plaintiffs need not plead a prima facie case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests." (citing Swierkiewicz, 534 U.S. at 512)).

Plaintiff has alleged a series of facts that plausibly suggest that his work environment was severely compromised between 2002 and his termination in 2007 by physical assault, a pattern of alleged retaliation and mistreatment, and threatening comments. See, e.g., Pratesi v. N.Y. State Unified Court Syst., No. 08 Civ. 4828 (DRH), 2010 WL 502950, at *11 (E.D.N.Y Feb. 9, 2010) (finding that plaintiff's allegation of eleven failures to promote in addition to six comments/incidents over twenty years were sufficient to withstand a motion to dismiss). Plaintiff's further allegation that his abusers were motivated by animus toward male and Hispanic employees suffices to adequately state a claim based on a hostile work environment.

Plaintiff's Constitutional Claims

*Collateral Estoppel/Res Judicata*

Defendants' argument that the doctrine of collateral estoppel gives preclusive effect to the findings of the OATH Administrative Law Judge as to Plaintiff's claims under § 1981, § 1983 and §1985 and SHRL and CHRL is unavailing.

In New York, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.  Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995).  Although defense proffers indicate that Plaintiff raised his discrimination or selective prosecution assertions at the hearings, there is no indication that the discrimination allegations were relevant to the question of whether Plaintiff had committed the charged infractions.  Thus, for issue preclusion purposes, even assuming the propriety of considering the content of the transcripts on a motion to dismiss, Defendants have failed to demonstrate that the allegations in this action were actually litigated and necessarily decided in the administrative proceeding.

Claim preclusion is inapplicable here, as the proceedings were ones in which Plaintiff was defending against disciplinary charges and did not provide an opportunity for Plaintiff to assert a claim for relief.  See Leather v. Eyck, 180 F.3d 420, 424-25 (2d Cir. 1999) (finding that, where a plaintiff could not have asserted a claim for constitutional damages as a defendant in a prior criminal proceeding, the plaintiff's selective prosecution action under § 1983 was not barred); Davidson v. Capuano, 792 F.2d 275, 282 (2d Cir. 1986) (holding that where a § 1983 claim could not have been adjudicated in a New York State Article 78 proceeding it was not barred).

*Statute of Limitations*

In New York, the statute of limitations for claims under 42 U.S.C. § 1983 is three years from the date of accrual.  See Owens v. Okure, 488 U.S. 235 (1989); N.Y. C.P.L.R. § 214(5). The Second Circuit has applied this limitations period to claims arising under §§ 1981 and 1985 as well.  See  King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002); Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994).  Plaintiff's claims under § 1981, 1983, and 1985 as well as SHRL and

CHRL, that are based on discrete acts of discrimination accrued prior to May 22, 2005, appear to be barred by the three-year statute of limitations.

Plaintiff's fourth, fifth and sixth causes of action were originally filed in this Court on July 16, 2004.  Plaintiff does not dispute that these claims are also untimely on their face.  Again, Plaintiff argues that the doctrine of equitable tolling permits this court to hear these claims as a matter of fairness.  For the reasons explained above, Defendants' motion is denied, insofar as it is premised on statute of limitations, without prejudice to later renewal of the affirmative defense.

*First Amendment Retaliation Claim*

Speech by  a public employee in his capacity as a citizen, on matters of public concern, is protected  by the First Amendment, and retaliation by the employer for such speech is actionable as a violation of First Amendment rights.  See  Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009); Garcetti v. Ceballos, 547 U.S. 410 (2006).  Here, Plaintiff's 2004 Southern District complaint concerned allegedly discriminatory and retaliatory treatment in the workplace.  The Second Circuit has not delineated precisely the circumstances under which public employees' allegations of governmental discrimination will be deemed to relate to matters of public concern. Compare Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 252 (2d Cir. 2006) (holding that where a public employee's complaint in a lawsuits concerns discrimination problems generally and is not limited to instances affecting only the plaintiff, the speech is a matter of public concern) with Sousa, 578 F.3d at 170  ("an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern").  The Sousa Court provided guidance that " [w]hether or not speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record . . . ." Sousa, 578 F.3d at 175 (citation and internal quotation marks omitted).  Plaintiff's allegations that multiple

individuals were involved in the discrimination against him and that Defendants' retaliation and discrimination amounts to a policy that broadly affects employees of the DOC are sufficient at the pleading stage to frame a question as to whether Plaintiff's 2004 Southern District complaint constituted speech as a citizen on matters of public concern.  Resolution of this question is properly left to later summary judgment motion practice or trial, on the basis of a more fully developed evidentiary record.

For the reasons explained above, Plaintiff's factual allegations are sufficient to provide the requisite plausible inference of retaliation.  Accordingly, Defendants' motion is denied as to Plaintiff's First Amendment claim.

*Sufficiency of Equal Protection Allegations*

Employment discrimination claims under Section 1983 that seek to vindicate a plaintiff's Fourteenth Amendment right to equal protection under the laws are measured against the same standards as are Plaintiff's Title VII hostile work environment and sex and race discrimination claims.  Hayut v. State Univ. of  N.Y., 352 F.3d 733, 745 (2d Cir. 2003); Sorlucco v. N.Y.  City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989); Harris v. Forklift Systs, Inc., 510 U.S. 17, 21 (1993). Plaintiff's Section 1983 claims are thus sufficient for the same reasons as are his Title VII claims.

*Claims under Section 1981*

Employment discrimination claims brought under Title VII and §1981 are subject to the same analysis.  See Choudhury v. Polytechnic Instit. of N.Y., 735 F.2d 38, 44 (2d Cir. 1984). However, sex-based discrimination is not actionable under Section 1981.  See Runyon v. McCrary, 427 U.S. 160, 167 (1976).  To the extent Plaintiff's Section 1981 claims allege racial discrimination and retaliation, they are sufficient for the reasons explained earlier in connection with Plaintiff's Title VII claims.  The Court denies Defendants' motion to dismiss the retaliation and racial discrimination

Section 1981 claims, and grants the motion with respect to all other claims brought pursuant to Section 1981.

Claims under Section 1985

In order to prevail under § 1985, a plaintiff must prove: "(1) a conspiracy; (2) for the purposes of depriving a person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); see also Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 585-87 (2d Cir. 1988). "In order to maintain an action under § 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end. " Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (citation and internal quotation marks omitted). The Second Circuit has consistently held that a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999). Plaintiff has not plead a sufficient factual basis to support a plausible inference that there was a meeting of the minds as between Defendants. With respects to the events that occurred prior to 2004, Plaintiff alleges only that "Deputy Schulman influenced the decision to transfer Plaintiff due to his close relationship with Corrections Officer Sadie Smith." (Compl. ¶ 59.) This proffer, which accompanies a conclusory allegation that Defendants had "a policy or custom of toleration of unlawful retaliation and discrimination on the basis of sex and race" and entirely conclusory assertions regarding the post-May 2005 events (Compl. ¶¶ 27-32), is insufficient to plead plausibly Plaintiff's conspiracy claim. See Romer v. Morgenthau, 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000) (holding that plaintiff's

allegations that one defendant was "urged and influenced by" and acted at the behest of another defendant was an insufficient pleading of the meeting of the minds requirement). Accordingly, the Court grants Defendants' motion to dismiss this claim, with leave for Plaintiff to amend his complaint.

*SHRL and CHRL Claims*

Plaintiff's state law claims are governed by a three-year statute of limitations. Thus, Plaintiff's claims arising out of his June 16, 2006, suspension and his February 22, 2007, termination are timely, and Plaintiff's claims for discrete acts of discrimination that accrued before May 22, 2005, are untimely absent equitable tolling, waiver or estoppel. Because the viability of Defendants' statute of limitations defense is not clear on the face of the pleading, Defendants' motion is denied to the extent they seek dismissal of the claims as untimely, without prejudice to litigation of the issue in connection with summary judgment motion practice or trial.

The merits of New York state and local law discrimination claims are generally evaluated under the same framework as claims brought under Title VII. See Forrest v. Jewish Guild for the Blind, 3 N.Y. 3d 295 (2004). Accordingly, the foregoing discussion of the sufficiency of Plaintiff's Title VII claims governs the disposition of his state and local law claims as well, and Defendants' motion to dismiss those claims is therefore denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Title VII claims are dismissed with prejudice insofar as they are asserted against the individual moving Defendants. Plaintiff's sex discrimination-based Section 1981 claims are dismissed with prejudice. Plaintiff's Section 1985 conspiracy claim is dismissed, with leave to replead. Plaintiff's amended complaint must be filed, and a courtesy copy provided for Chambers, by **April 30, 2010.** Failure to file a timely amended complaint will result in the dismissal with prejudice of the conspiracy claim without further advance notice to Plaintiff. Defendants' motion is denied in all other respects.

This Memorandum Opinion and Order resolves docket entry no. 19.

The next pretrial conference in this case will be held on **April 16, 2010, at 11:00 a.m.** The parties must file an updated joint preliminary pretrial statement (and provide a courtesy copy for Chambers) by **April 9, 2010**.

SO ORDERED.

Dated: New York, New York
      March 30, 2010

                                       LAURA TAYLOR SWAIN
                                       United States District Judge